UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **G&G CLOSED CIRCUIT EVENTS,** § <br> **LLC,** *as Broadcast Licensee of the 5/4/2019* § <br> *Álvarez v. Jacobs Championship Fight* § <br> *Program,* § <br> ***Plaintiff,*** § <br> § <br> **v.** § <br> § <br> **EP TRUST, LLC,** *d/b/a EL PROFE* § <br> *CANTINA d/b/a PROFE CANTINA,* **and** § <br> **EDGAR HERNANDEZ,** *d/b/a EL PROFE* § <br> *CANTINA d/b/a PROFE CANTINA,* § <br> § <br> ***Defendants.*** § | | EP-21-CV-00226-DCG |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff G&G Closed Circuit Events, LLC's ("Plaintiff") "Motion for Final Default Judgment and Supporting Brief" (ECF No. 13) filed in the above-captioned action. Plaintiff brought this lawsuit alleging that Defendants (1) EP Trust, LLC, d/b/a El Profe Cantina and d/b/a Profe Cantina ("EP Trust") and (2) Edgar Hernandez, individually, and d/b/a El Profe Cantina and d/b/a Profe Cantina ("Hernandez") (collectively "Defendants") violated the Federal Communications Act of 1934. Although Defendants were served with a summons on October 22, 2021, to date, they have not answered Plaintiff's Complaint or otherwise appeared in this case. Plaintiff now moves the Court to enter a default judgment against Defendants and award damages, costs, and attorneys' fees to Plaintiff. For the reasons that follow, the Court **GRANTS IN PART** Plaintiff's motion.

## I.   BACKGROUND

Plaintiff is in the business of distributing and licensing exhibitions of sports and entertainment events to commercial locations.[1] It has the exclusive authority to sublicense the rights to exhibit the broadcast of the May 4, 2019 *Saul "Canelo" Alvarez v. Daniel Jacobs WBA/WBC/IBF Middleweight Championship Fight Program*, including the undercard or preliminary bouts and commentary ("Event"), at closed-circuit commercial premises such as bars, clubs, pubs, lounges, social clubs, restaurants and other similar commercial establishments throughout the State of Texas.[2] On May 4, 2019, the broadcast of the Event originated via satellite, and the interstate transmission of the Event was electronically coded or "scrambled."[3] A commercial establishment could exhibit the Event, if it had entered into a license agreement with Plaintiff and paid a scheduled license fee.[4] Where an establishment had done so, it was provided with the electronic decoding capability and the satellite coordinates necessary to receive the signal or its cable or satellite provider was notified to unscramble the reception of the Event for the establishment.[5]

On May 4, 2019, Defendants owned and operated El Profe Cantina and located at 2720 N. Mesa, Suite B, El Paso, Texas 79902 ("Establishment").[6] According to Plaintiff, on that day, without authorization or permission from Plaintiff and without paying the required commercial

---

[1] *See* Compl. at ¶ 6, ECF No. 1; Mot., Ex. A, at ¶ 4 [hereinafter Riley Aff.], ECF No. 13-1 (on pp. 5–11).

[2] Compl. at ¶ 6; Riley Aff. at ¶ 4; Mot., Ex. A-1, at ¶ 1 [herein after Master Service Agreement], ECF No. 13-1 (on pp. 13–34).

[3] Compl. at ¶ 9; Riley Aff. at ¶ 6.

[4] Compl. at ¶¶ 10–11; Riley Aff. at ¶ 6–7.

[5] Compl. at ¶¶ 10–11; Riley Aff. at ¶ 6–7.

[6] Compl. at ¶¶ 2–3.

license fee to Plaintiff, Defendants intercepted the interstate transmission of the Event and exhibited the Event to the patrons at the Establishment.[7] Plaintiff did not provide Defendants or the Establishment with the electronic decoding capability or satellite coordinates necessary to receive the signal of the Event; nor did it notify any cable or satellite provider to unscramble the reception of the Event for the Establishment.[8]

On September 20, 2021, Plaintiff brought the instant lawsuit against Defendants, charging them with illegally intercepting and publishing the telecast of the Event in violation of 47 U.S.C. § 605, commonly known as the Federal Communications Act of 1934.[9] On October 22, 2021, Plaintiff effected service of process upon Defendants by personal delivery.[10] To date, Defendants have not answered Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure 12[11] or otherwise appeared in this case. On January 18, 2022, Plaintiff filed a "Request to Enter Default" (ECF No. 10) against Defendants, and on January 31, 2022, the Clerk granted the request pursuant to Federal Rule of Civil Procedure 55(a).[12] On March 15, 2022, Plaintiff filed the instant motion; Plaintiff's counsel certifies that a true and correct copy of the motion was served upon Defendants via U.S. mail.[13]

---

[7] Compl. at ¶ 12; Riley Aff. at ¶ 8; Mot., Ex. A-2, at 1 [hereinafter Ballou Aff.], ECF No. 13-1 (on pp. 36–37).

[8] Riley Aff. at ¶ 9; *cf. also* Compl. at ¶ 11.

[9] Compl. at ¶ 17; Mot. at ¶ 3, ECF No. 7.

[10] *See* Summons Returned Executed, ECF Nos. 6, 7.

[11] Federal Rule of Civil Procedure 12 provides that unless a different time is prescribed by federal statute a defendant shall serve an answer within twenty-one days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i).

[12] Entry of Default, ECF No. 11.

[13] Mot. at 13, ECF No. 13.

## II. APPLICABLE LAW

**A. Legal Standard**

Federal Rule of Civil Procedure 55 governs entry of default judgment. Initially, the clerk of the court must enter default against a defendant if the defendant fails to plead or otherwise defend and the plaintiff shows that failure by affidavit or otherwise. *See* Fed. R. Civ. P. 55(a). Thereafter, the plaintiff may move the court for a default judgment. *See id.* 55(b); *see also N. Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*." (emphasis added)). The court may grant the motion only if there is "a sufficient basis in the pleading for the [default] judgment." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In addition to the complaint, the court, may consider evidence that "simply add[s] factual details [and thereby] fleshe[s] out [the plaintiff's] claim" or "serve[s] as further proof" of the plaintiff's allegations. *Wooten v. McDonald Trans. Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015).

In assessing whether the complaint contains a sufficient basis for a default judgment, the court applies the standard governing the sufficiency of a complaint under Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498; *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context."). Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)); *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206 ("A default judgment [must be] supported by well-pleaded allegations, assumed to be true."). "'Detailed factual allegations' are not required, but the complaint must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Wooten*, 788 F.3d at 498 (brackets omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although a default judgment, which is a judgment on the merits, conclusively establishes the defendant's liability, it does not establish the amount of damages. *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The complaint's factual allegations regarding damages, even if well-pleaded, must still be proven. *See id.* Damages should not be awarded absent "a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, a hearing is not necessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Freeman*, 605 F.2d at 857. The court may rely on detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## B. The Federal Communication Act

The Federal Communications Act (the FCA or Act) prohibits any unauthorized person from "intercept[ing] any radio communication and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). The Act creates a private right of action for "[a]ny person aggrieved by any violation of [47 U.S.C. § 605(a)]." *Id.* § 605(e)(3)(A). To prevail on a claim for violations of § 605(a), a plaintiff must prove that a defendant "intercepted or otherwise unlawfully appropriated" the plaintiff's communication. *DIRECTV Inc. v. Robson*, 420 F.3d

532, 537 (5th Cir. 2005). The remedies and penalties for the violations include: actual or statutory damages, at the plaintiff's election; enhanced damages; and costs, including attorneys' fees. 47 U.S.C. § 605(e).

### III. DISCUSSION

Plaintiff requests the Court to enter a default judgment in its favor and against Defendants. It requests statutory compensatory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), *see* Mot. at ¶ 19; statutory enhanced damages under § 605(e)(3)(C)(ii), *id.* at ¶ 26; and attorneys' fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii), *id.* at ¶ 28. Plaintiff also seeks post-judgment interest at the highest lawful rate. *Id.* at 12. In support of its Motion, Plaintiff submitted three affidavits: (1) an affidavit by Brigitte Ballou, Plaintiff's auditor, who visited the Establishment on the night of the Event, *see* Ballou Aff., *supra*; (2) an affidavit by Thomas P. Riley, an attorney retained by Plaintiff to investigate theft and piracy of Plaintiff's programs, including the Event, *see* Riley Aff., *supra*; and (3) an affidavit by David Diaz, Plaintiff's attorney in this case, *see* Mot., Ex. B [hereinafter Diaz Aff.], ECF No. 13-1 (on pp. 49–61).

A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," but not "conclusions of law." *Nishimatsu Constr. Co.*, 515 F.2d at 1206, *supra*. Accordingly, in ruling on this motion, where applicable, the Court will rely on well-pleaded facts in Plaintiff's Complaint—accepting them as admitted—and facts established by the affidavits and authenticated exhibits—accepting them as uncontroverted. *See Wooten*, 788 F.3d at 500, *supra*.

### A. Plaintiff's Request for Default Judgment

Defendants' default serves to admit that Plaintiff had the exclusive right to sub-license the Event on May 4, 2019. Compl. at ¶ 6. Defendants, by their default, also admit that the Event was communicated via satellite. *Id.* at ¶ 9. Likewise, Defendants admit that they owned or

operated the Establishment on May 4, 2019, and on that day, the Establishment intercepted and published the Event without authorization. *Id.* at ¶¶ 2–3, 12. As further proof, Plaintiff's retained investigative attorney declares that Defendants did not purchase the Event from Plaintiff and were not otherwise authorized to receive the Event. Riley Aff. at ¶¶ 8–9. Moreover, at the time of the Event's telecast, Plaintiff's auditor visited the Establishment and observed that the Event was exhibited on three 40-inch televisions at the Establishment. *See* Ballou Aff. at 1.

The Court finds that the Complaint "met the low threshold of content demanded by Federal Rule of Civil Procedure 8," *cf. Wooten*, 788 F.3d at 494. Accordingly, the Court concludes that the admitted well-pleaded facts and the submitted evidence provide a sufficient basis to hold that Defendants violated § 605 of the FCA. The Court therefore grants Plaintiff's request for default judgment against Defendants.

## B. Plaintiff's Requested Damages

### 1. *Statutory Compensatory Damages*

Plaintiff seeks $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Mot. at ¶ 19. That sub-section provides, in pertinent part, that "the party aggrieved *may* recover an award of statutory damages for each violation of [§ 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, *as the court considers just.*" § 605(e)(3)(C)(i)(II) (emphasis added). Thus, the amount of damages to be awarded under this sub-section is within the sound discretion of the trial court, so long as it falls within the prescribed range.

Courts generally determine the amount of the compensatory award based on the sub-licensing fee that a defendant would have paid to a plaintiff in an arms-length business transaction. Here, Plaintiff charges licensing fee based on the fire code occupancy capacity of a commercial establishment. *See* Riley Aff. at ¶ 7; Master Serv. Agreement at ¶ 1; Mot., Ex. A-3

[hereinafter, Rate Card], ECF No. 13-1 (on p. 47); *see also J&J Sports Prods., Inc. v. Patino*, No. EP-16-CV-00412-DCG, 2017 WL 2297029, at *3 (W.D. Tex. May 24, 2017) (awarding statutory damages based on the maximum seating capacity). Plaintiff's auditor states that the capacity of the Establishment is approximately 140 people. *See* Ballou Aff. at 1. Plaintiff's scheduled licensing fee for an establishment that seats up to 200 patrons is $2,750. *See* Rate Card. Accordingly, the Court considers it just to award **$2,750** as Plaintiff's statutory compensatory damages under § 605(e)(3)(C)(i)(II).

### 2. *Statutory Enhanced Damages*

Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), Plaintiff seeks $50,000 in statutory enhanced damages, which represents, according to Plaintiff, five-times the statutory damages it seeks ($10,000) under § 605(e)(3)(C)(i)(II). Mot. at ¶ 26. That sub-section provides, in relevant part, that if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court *in its discretion* may increase the award of damages. . . by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii) (emphasis added). By its plain language, the statute gives a court discretion to enhance the damages award.

While the FCA does not define "willfully," courts have applied the definition of willfulness provided by the Supreme Court in civil contexts, under which courts inquire whether a defendant's conduct entailed a "'disregard for the governing statute and an indifference for its requirements.'" *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985))); *see also, e.g., Entm't by J&J Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776–77 (S.D. Tex. 2002) (applying the same definition). A trial court may infer the defendant's knowledge of, and

therefore disregard for, the statute, where, as here, the defendant exhibited the telecast at a commercial establishment without proper authorization. *See Kingvision Pay-Per-View, Ltd. v. Valles*, Civ. A. No. 00-CA-179-DB, 2001 WL 682205, at *3 (W.D. Tex. Mar. 30, 2001) ("While Defendants may not have been well-versed in the statutory restrictions . . . there must have been some knowledge on the part of Defendants[] that such interception could not be had for free."). Moreover, the court may infer the defendant's indifference for the statutory requirements, because of the sheer unlikelihood that a defendant could accidentally intercept or receive a scrambled cable or satellite signal. *See Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 385 (W.D. Tex. 2008). After all, "'signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.'" *Id.* (quoting *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)).

Here, Plaintiff submitted affidavits that demonstrate willfulness. The transmission of the Event was electronically coded or scrambled. Riley Aff. at ¶ 6. Plaintiff's auditor who visited the Establishment on the night the Event was telecasted observed that the Establishment exhibited the Event. Ballou Aff. at 1. Defendants did not purchase the Event from Plaintiff and were not authorized to intercept and exhibit the Event. Riley Aff. at ¶¶ 8–9. Applying the above-mentioned definition of "willful" to these facts, the Court concludes that Defendants acted willfully.

The next inquiry is whether Defendants violated the FCA "for purposes of direct or indirect commercial advantage or private financial gain." § 605(e)(3)(C)(i)(II). In determining the amount of an award for willfulness damages where Defendants intended to exhibit the program to secure a private financial gain and direct commercial advantage by misappropriating the plaintiff's licensed exhibitions and infringing on its rights, "courts have considered such

factors as the number of televisions on which defendants broadcast the Event, the food and beverages it sold to customers, as well as the cover charge, and whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact." *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (citing illustrative cases). Courts have also considered whether the defendant advertised the program to draw customers. *See, e.g., J & J Sports Prods., Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) ("Defendants openly advertised the Event on a marquee outside its establishment which serves as evidence that the Event was shown for the purpose of commercial advantage or private financial gains.").

Here, there is no evidence that the Establishment advertised the Event. Plaintiff's auditor states that there was no cover charge to enter the Establishment. Ballou Aff. The auditor describes the Establishment as a bar, *id.*, and Plaintiff states that the Establishment held a license or permit issued by the Texas Alcoholic Beverage Commission, Compl. at ¶ 2. According to the auditor, at the time he visited the bar, there were 17 patrons. Ballou Aff. The Court finds that this evidence provides some support for Plaintiff's claim that Defendants' actions were for purposes of direct or indirect commercial advantage.

The Court however finds that Plaintiff's requested amount of enhanced damages ($50,000) is excessive. The Court is mindful that the purpose of these enhanced damages is to discourage would-be pirates, including Defendants from engaging in piracy in the future—but not to drive Defendants out of business. *See Garcia*, 546 F. Supp. 2d at 386 ("Defendants is not a major chain, and while this violation deserves to be punished, it should not be done in a manner than imposes an insurmountable financial burden."). Accordingly, the Court awards Plaintiff an

additional **$5,500** in statutory enhanced damages (that is still two-times the statutory damages awarded above), finding the sum to be reasonable in light of Defendants' conduct.

### 3. *Attorneys' Fees, Costs, and Post-Judgment Interest*

The FCA provides that the court "*shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). Plaintiff seeks an award of attorneys' fees based on hourly time spent for prosecution of this case through default judgment, along with fees for post-trial and appellate services. Mot. at ¶ 28; *id.* at p. 12. In support, Plaintiff's counsel, in an affidavit, states that $300 per hour is reasonable rate given his experience and the type of litigation involved in this case, *i.e.*, anti-piracy litigation. *See* Diaz Aff. at ¶ 6. He also affirms that he expended 5.0 hours on this case. *Id.* at ¶ 5. Thus, he seeks $1,500 in attorney fees.

Recently, in another FCA case, the Court has found that the reasonable hourly rate for Mr. Diaz was $250. *J&J Sports Prods., Inc. v. Da-Vi Corp.*, No. EP-19-CV-00126-DCG, 2020 WL 2043981, at *6 (W.D. Tex. Apr. 28, 2020). It finds the same here. *See J & J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020) (affirming fee award in an FCA case based on a rate of $250/hour). The Court therefore finds that **$1,250** is a fair and reasonable lodestar in this case.[14]

The Court awards Plaintiff its full costs. *See* Fed. R. Civ. P. 54 ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorneys' fees--should be allowed to the prevailing party."). Plaintiff may file a proposed bill of costs in accordance with Local Court Rule CV-54(a). Finally, the Court awards post-judgment interest, which shall be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-

---

[14] At this time, the Court denies Plaintiff's request for "attorney's fees for post-trial or appellate services." Mot. at 18. Plaintiff is free to request such an award when and if it incurs any such fees.

-11-

year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Such interest shall be computed and compounded as provided in 28 U.S.C. § 1961(b).

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff G&G Closed Circuit Events, LLC's Motion for Final Default Judgment and Supporting Brief (ECF No. 13) is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff and against Defendant EP Trust, LLC, d/b/a El Profe Cantina and d/b/a Profe Cantina and Defendant Edgar Hernandez, individually, and d/b/a El Profe Cantina and d/b/a Profe Cantina and the above-caption case is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants **SHALL PAY** Plaintiff:

a. **$2,750** in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

b. **$5,500** in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

c. **$1,250** in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

**In total,** the Court **GRANTS** default judgment in favor of Plaintiff and against Defendants in the amount of **$9,500 PLUS costs.** Plaintiff may file a proposed bill of costs in accordance with this District's Local Rule CV-54(a).

**IT IS MOREOVER ORDERED** that Defendants, jointly and severally, **SHALL PAY** Plaintiff post-judgment interest at the rate of **1.30%**, until paid in full, to be compounded annually pursuant to the provisions of 28 U.S.C. § 1961(b).

**IT IS FINALLY ORDERED** that all pending motions, if any, are **DENIED AS MOOT**, and that the District Clerk **SHALL CLOSE** this case.

So ORDERED and SIGNED this 25th day of March 2022.

*[signature]*
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE